DICKSON, Justice,
concurring in part and dissenting in part.
I dissent in part because, on the issue of punitive damages, I agree with Justice Sullivan's separate opinion.
I concur, however, with the majority's holding that the terms of this insurance contract may operate to reduce the amount payable by the Estate for bodily injury liability damages by amounts paid by the Estate's automobile insurance company to the plaintiffs under the medical payments coverage. I write separately on this issue to emphasize that the Advance Payment statute does not independently apply to payments made under the medical payments coverage of an automobile insurance policy.
It is important to realize that the Court's holding derives from the language of the insurance policy contract between the decedent and his automobile insurance company, and such result would not otherwise be required by the Indiana "Advance Payment" statute, Section 3 of which provides:
If it is determined that the plaintiff is entitled to recover in an action described in section 1 of this chapter [limiting the chapter to actions to recover damages for personal injuries, wrongful death, or property damage, and involving only one defendant]:
(1) the defendant may introduce evidence of any advance payment made; [9] and
(2) the court shall reduce the award to the plaintiff to the extent that the award includes an amount paid by the advance payment.
Ind.Code § 34-44-2-8 (emphasis added). For the purposes of the Advance Payment Statute, the term "advance payment" is defined as a payment made:
(1) by:
(A) the defendant in an action to. recover damages for personal injuries, wrongful death, or property damage; or
(B) the defendant's insurance company; and
*144 (2) to or for the plaintiff or any other person.
Ind.Code § 34-6-2-3. As thus limited, however, a court shall reduce an award to the plaintiff but only "to the extent the award includes" such an advance payment. Ind.Code § 34-44-2-3(2).
Within the normal custom and usage in the field of automobile insurance, the term "advance payments" refers to voluntary payments made by a liability insurer in advance of any final settlement with a claimant, which are intended to assist the claimant in meeting ongoing living expenses before the severity of injury and extent of damages can be fully assessed and a negotiated settlement reached. James L. Graham, Advance Payment in Personal Injury Claims, 3 THE FORUM 208-209 (1968); Frederick J. Hislop et al., Advance Payments and Rehabilitation, 18 Ersp'nx Or Ins. Couns. Q. 25, 30-81 (1968). A principal advantage to the insurer is that such voluntary payments make it less likely that the claimants will seek legal advice and representation and rather settle directly with the liability insurer. Hislop, supra, at 25, 46. The advent of the advance payments technique for handling claims by lability insurance companies modified the prior general practice of withholding all payments to an injured claimant until the claimant was willing to sign a full and final release. Id. at 80. But advance payments do not merely benefit liability insurers. They are also quite advantageous to personal injury victims, particularly those whose injuries involve protracted treatment, uninsured medical expenses, or loss of income. The statute thus encourages this humanitarian practice of voluntary advance payments by tortfea-sors and their insurers.
The language of the statute, by providing that a court shall reduce an award to the plaintiff "to the extent" it includes such an advance payment, applies to require an offset only for the same type of payments. Thus a pre-suit payment for automobile property damage by a liability insurer is not to be applied to reduce an award for bodily injury liability.
So it is with payments made under contractual medical payments coverage. A policyholder pays an additional premium for this coverage and it provides payment of medical expenses for passengers in the insured vehicle without regard to lability. Benefits under medical payments coverage are thus independent of liability coverage benefits, except where the policy terms provide otherwise. For this reason, contractual medical coverage payments are of a wholly different nature than amounts due under a liability award against a tort-feasor or the liability insurer. The "to the extent [it] includes" language of the advance payment statute, standing alone, therefore does not include contractual medical payment benefits previously received by a personal injury plaintiff.
But where the policyholder and insurer have agreed otherwise, as provided here by the express terms of the insurance contract, that payments made under medical payments coverage operate to reduce the limits of bodily injury liability coverage, the Advance Payment statute will apply to require such advanced medical expenses to be excluded from a lability judgment against the insured.
I also agree with the majority's conclusion that the subrogation statute, Indiana Code § 34-53-1-2, does not apply here because the policy language provides for a limitation and not a recovery or reimbursement. Such limitation is thus not in the nature of "subrogation or reimbursement rights."

. Note that evidence of advance payment is permitted only after it is determined that a plaintiff is entitled to recover. This is further assured by subsection 2(b) of the Advance Payment statute: "Except as provided in section 3 of this chapter, evidence of an advance payment is not admissible during the trial for any purpose by either plaintiff or defendant." Ind.Code § 34-44-2-2(b).